UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES BAKER,

                    Petitioner,                    **DECISION AND ORDER**
                                                    **No. 03-CV-0925(VEB)**
          -vs-

TIMOTHY MURRAY, Superintendent,
Gowanda Correctional Facility,

                    Respondent.

_____

## INTRODUCTION

Petitioner, James Baker, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Livingston County Court following a guilty plea to charges of first degree sexual abuse, first degree aggravated unlicensed operation of a vehicle, and driving while ability impaired. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The lengthy and somewhat convoluted procedural history of petitioner's state court convictions is thoroughly and clearly set forth in respondent's memorandum of law.  *See* Respondent's Memorandum of Law at 1-5 (Docket No. 7). For purposes of disposing of the instant petition, the Court shall begin its review of the procedural history of petitioner's case in January 2000. At that time, there were four indictments pending against petitioner in Livingston County that are of relevance here. The first one, Indictment No. 99-006, arose from petitioner's arrest on November 7, 1998, for driving while intoxicated ("DWI") in violation of New York

Vehicle and Traffic Law § 1192. He had previously been convicted of DWI in 1989, and that

conviction enhanced the November 7, 1998 offense to a felony. *See* N.Y. V.T.L. § 1193(c).

Petitioner was arrested on November 24, 1998, and charged with committing various

sexual offenses against A.H. and J.H., the young daughters of his girlfriend with whom he was

living. By indictment No. 99-019, he was charged with first degree course of sexual conduct

against a child, second degree sexual abuse, third degree rape, and third degree sodomy; the top

count of the indictment later was reduced by the trial court to second degree course of sexual

conduct against a child. Indictment No. 99-019 alleged that petitioner had committed the crimes

of second degree sexual abuse against A.H on or about May 10, 1998, and also that he

committed the crimes of third degree rape and third degree sodomy against J.H., A.H.'s sister, in

early July 1998. Respondent's Answer ("Resp't Ans."), Ex. BB at 8-10. The prosecutor later re-

presented the case to the grand jury, which returned Indictment No. 99-249 charging petitioner

with first degree course of sexual conduct against a child, based on petitioner allegedly having

engaged in two or more acts of sexual conduct between October 1, 1996, and January 22, 1997,

with A.H when she was ten years-old. Upon motion of the prosecutor, these two indictments

were consolidated

On February 5, 1999, petitioner was arrested for driving while intoxicated and with a

suspended license. Indictment No. 99-039 charged petitioner with two counts of driving while

intoxicated ("DWI") and one count of aggravated unlicensed operation of a vehicle in the first

degree ("AUO-1").

In the meantime, petitioner went to trial on the charges relating to the November 1998

DWI and was found guilty, on January 11, 2000, of all counts. (This conviction is not at issue in

the present habeas petition.) It should be noted that, prior to this trial, the prosecutor, on several occasions, had extended to petitioner a plea offer of a six-year determinate sentence, which petitioner rejected. However, on January 19, 2000, petitioner accepted the offer to plead guilty to AUO-1 and driving while ability impaired ("DWAI") in satisfaction of Indictment No. 99-039 and also to first degree sexual abuse, a class D felony, in satisfaction of Indictment Nos. 99-019 and 99-249. As part of the plea agreement, petitioner waived his right to appeal and, on February 29, 2000, he signed a waiver of his right to appeal. Resp't Ans., Ex. X at 18; Ex. Q at 7-10, Ex. BB at 134.

Petitioner was sentenced to concurrent terms of imprisonment, the longest of which was six years. Even though petitioner had waived his right to appeal, he pursued a direct appeal of his convictions on the three indictments. The Appellate Division, Fourth Department, of New York State Supreme Court affirmed all of petitioner's convictions. Petitioner filed a motion to vacate pursuant to New York Criminal Procedure Law § 440.30 and an application for a writ of error *coram nobis*, both of which were unsuccessful.

This federal habeas petition followed in which petitioner raises four grounds for habeas relief. *See* Petition (Docket No. 1) and Traverse (Docket No. 12). Respondent answered the petition on April 30, 2004. Respondent did not waive the exhaustion requirement but noted that "a thorough discussion of petitioner's various challenges to his conviction would take nearly as long as an examination of the merits." Respondent's Memorandum of Law at 6 (Docket No. 7). The Court agrees and, in the interest of judicial economy, will proceed to consider the merits of the petition.

For the reasons set forth below, petitioner's request for a writ of habeas corpus is denied

and the petition is dismissed.

## DISCUSSION

### "In Custody" Requirement

The Court observes that petitioner has completed his sentence and was released from prison on February 9, 2005. A petitioner may file a petition for habeas relief only if he is "in custody." *Wheel v. Robinson*, 34 F.3d 60, 63 (2d Cir. 1994) (citing 28 U.S.C. § 2254(a)). However, § 2254(a) requires only that "'the habeas petitioner be "in custody" under the conviction or sentence under attack at the time [the] petition is filed.'" *Id.* (quoting *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (*per curiam*) (in turn citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)); *accord Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (holding that the "in custody" provision only requires that the petitioner be in custody at the time the petition is filed). Thus, because petitioner filed his habeas petition while he was incarcerated, he satisfies the "custody" requirement of § 2254.

The Supreme Court has held that a habeas petition challenging a criminal conviction is "not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction may still impinge on the petitioner post-release, and therefore a case or controversy may continue to exist." *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) (citing *Pollard v. United States*, 352 U.S. 354, 358 (1957); *Sibron v. New York*, 392 U.S. 40, 54-56 (1968) (citing deportation, inability to become a citizen, impeachment evidence in future criminal trials, and increased future sentences as examples of collateral consequences and asserting a presumption that these consequences attach to criminal convictions post-release)). Once a litigant's sentence has expired, however, "some concrete and continuing injury other than

the now-ended incarceration or parole-some 'collateral consequence' of the conviction-must exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7 (quoting *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968)).

For petitioners such as Baker, who are challenging the validity of their convictions on federal habeas, the Supreme Court has "been willing to *presume* that a wrongful criminal conviction has continuing collateral consequences" so that their habeas petitions do not become moot after their release. *Id.* at 8 (emphasis added). In light of the presumption of collateral consequences applicable here, the Court finds that, notwithstanding his release from incarceration, petitioner's habeas petition presents a justiciable "case or controversy" for purposes of conferring subject matter jurisdiction under Article III, Section 2 of the United States Constitution.

## Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

## Claims Raised in the Petition

Petitioner asserts in his petition that (1) his "conviction [was] obtained by plea guilty [*sic*] which was unlawfully induced or not made voluntarily with understanding of the nature of

the charge and the consequences of the plea"; (2) he was denied the effective assistance of trial

counsel; (3) his conviction was "obtained by coerced evidence gained pursuant to an

unconstitutional witness tampering by State and Judicial officials/officers"; and (4) his

conviction was "obtained by the unconstitutional failure of the prosecution to disclose to the

defendant ebidence [*sic*] favorable to the defendant." Petition, ¶¶22(A)- (D) (Docket No. 1).

Respondent asserts that  petitioner, as part of his plea bargain waived his right to appeal and

therefore has waived all of his claims except the claim of ineffective assistance of trial counsel.

**Legal Effect of Petitioner's Guilty Plea**

In *Tollett v. Henderson*, the Supreme Court reaffirmed the principle articulated in the

"*Brady* trilogy"[1] that "a guilty plea represents a break in the chain of events which has preceded

it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Once a defendant has

pleaded guilty in open court to the offense with which he is charged, he may not subsequently

raise independent claims relating to alleged violations of constitutional rights that occurred prior

to the entry of the guilty plea. *Id.* (holding that a counseled guilty plea barred a state prisoner's

claim of racial discrimination in the selection of the indicting grand jury); *see also Brady v.*

*United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed.2d 747 (1970) (holding that a valid guilty

plea barred review of claim of impermissible burden on the right to jury imposed by the structure

of the Federal Kidnaping Act); *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L.

Ed.2d 763 (1970) (holding that a valid guilty plea foreclosed review of allegations of coerced

confessions); *Parker v. North Carolina*, 397 U.S. 790, 90 S. Ct. 1458, 25 L. Ed.2d 785 (1970)

---

[1] *Brady v. United States*, 397 U.S. 742, 750 (1970); *McMann v. Richardson*, 397 U.S. 759, 770 (1970), and *Parker v. North Carolina*, 397 U.S. 790 (1970).

(same).  Because a "plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence[,]" review of the conviction is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 762, 102 L. Ed.2d 927 (1989); *see also Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-47, 81 L. Ed.2d 437 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). In *Tollett*, the Supreme Court noted that "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." 411 U.S. at 266; *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970)  (stating that relevant inquiry for the federal habeas court was whether the guilty plea "represent[ed] a voluntary and intelligent choice among the alternative courses of action open to the defendant"). If a petitioner pleads guilty based "on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann*, 397 U.S. at 771.

In general, then, a federal habeas court must limit its review to whether a petitioner's guilty plea was knowing, voluntary, and intelligent, and whether he received the effective assistance of counsel in making the decision to plead guilty. *See*, *e.g.*, *Mabry*, 467 U.S. at 508; *Tollett*, 411 U.S. at 267. Here, the Supreme Court precedent discussed above forecloses this Court's consideration on habeas review of any claims other than those relating to the voluntary nature of petitioner's plea and whether he received the effective assistance of counsel in regard

to his decision to plead guilty.[2] The Court will consider the voluntariness claim first.

**Merits of the Petition**

**1.      Involuntariness of guilty plea**

      This claim centers on petitioner's plea of guilty to first degree sexual abuse. He states in

his petition as follows:

> At the time of plea [*sic*] I did not realize that offence was alledged [*sic*] to have
> happened in 1996 until I received the alledged [*sic*] witness/Victim's statement
> and expert witness's investigation report that I then put 2+2 togeather [*sic*] and
> realized I made a mistake in taking the plea. I was unable to do the Math in my
> head in the intimidating open Court. Now I know for sure I made a mistake.

Petition, ¶22(A) (Docket No. 1). Respondent points out that it is not clear what "mistake"

petitioner is claiming to have made. *See* Respondent's Memorandum of Law at 9 n. 9 (Docket

No. 7). In an attempt to decipher Baker's argument, respondent suggests several arguments that

Baker might be making: that he did abuse the victim, but at a different time; that he did abuse the

victim, but only after she turned eleven; or that he in fact abused the victim continuously,

refraining only during the time-period for which he was prosecuted. *See id.*  As respondent

argues, regardless of how Baker's argument is parsed, it is wholly without merit because it is

clear that at the time of the plea petitioner admitted under oath the incriminating facts that he

now wishes to deny. Apart from petitioner's unsupported allegations, there is no basis for finding

otherwise. As respondent notes, Indictment No. 99-019 clearly sets forth the elements of the

charge of first degree sexual abuse, including the allegation that the victim was less than eleven

years-old at the time of the crime. The indictment also specifies the victim's date of birth and

---

[2] Even if the Court were to consider the other claims, the Court would dismiss them as patently without
merit for the reasons argued by respondent. *See* Respondent's Memorandum of Law at 20-25 (Docket No. 7).

indicates that the time period in question was October 1, 1996, to January 22, 1997.

Respondent's Memorandum of Law ("Resp't Mem.") at 10 (Docket No. 7) (citing Resp't Ans.,

Ex. BB, pp. 9-10). Indictment No. 99-249, which was joined with No. 99-019, contains this

information as well. *Id.* (citing Resp't Ans., Ex. BB, p. 8). Thus, as respondent asserts, from the

moment that petitioner was formally charged, he was on notice as to the age element and the

relevant time-frame for the sexual abuse charge. Furthermore, at the plea colloquy, the

prosecutor explained the relevant time period again, and petitioner confirmed that he knew that

the victim's birthday was in late January 1986, and that he engaged in sexual contact with her

sometime before her eleventh birthday. *See* Resp't Ans., Ex. X (Plea Transcript at 16).

Moreover, the transcript from the plea hearing removes any doubts that petitioner did not

know what he was doing when he pled guilty. At the hearing before Judge Cicoria in Livingston

County Court on January 19, 2000, the prosecutor began by explaining the parties'

understanding of the components of the plea agreement:

> Mr. Moran:    As a result of a number of conversations and discussions, it's my understanding that Mr. Baker has now decided to change his plea of not guilty to the DWI and AUO 1st case of tomorrow and the sex cases of February 16th. Upon a plea to DWAI, driving while ability impaired, and aggravated unlicensed operation of a motor vehicle in the first degree under 99-039, the court would sentence the defendant to a term of one-and-a-third to four years to be served concurrently or at the same time as the other sentences to be handed down on the prior conviction for DWI and related matters as well as the sentence to be handed down on the sex crimes. The sex crimes would be resolved by a plea to sexual abuse in the first degree, a D felony, in full satisfaction of both Indictments 99-019 and 99-249, the sentence to be six years determinate. That sentence will be as a second felony offender[3] where the second felony is a

---

[3] The prosecutor explained the petitioner had a prior DWI conviction from October 1989 that resulted in a conviction for a Class E felony.

violent felony by statute. . . .

Resp't Ans., Ex. X (Plea Transcript at 2-3). Defense counsel then reviewed the discussions he

had had with petitioner about the plea deal:

> Mr. Cannon:    I discussed all of these indictments at length with Mr. Baker.
> While Mr. Moran was putting our agreement on the record, I asked
> Mr. Baker if he understood what we were doing and he said, yes.
> In fact, before coming into the courtroom this afternoon I spent
> about a half hour over at the jail with him in person discussing this
> or these cases; I also had several phone calls with him today
> discussing these indictments, many meetings in person and in the
> courtroom and at the jail over the course of the last six, eight
> months, however long these indictments have been pending,
> dozens of phone calls discussing this case.
> I have informed Mr. Baker that he has a right to proceed with a
> jury trial scheduled for tomorrow morning, that the burden at that
> trial like at the other one would be upon Mr. Moran to prove his
> guilt beyond a reasonable doubt, told him he could testify in his
> own defense, also told him he doesn't have to waive his right to
> appeal or do anything that he's agreeing to today, that I'm happy
> to continue to represent him, happy to try the DWI and AUO, the
> trial scheduled for tomorrow and equally happy to proceed with
> the trial on the sex offenses.
> Mr. Baker told me essentially that he doesn't want to have
> anymore trials, that he wants to negotiate the best deal that he can
> for himself and he asked me to do that for him this afternoon and I
> found Mr. Moran and we have come to the agreement that's been
> put on the record. . . .

Resp't Ans., Ex. X (Plea Transcript at 6-8). The trial court then commented about Mr. Cannon's

representation as follows:

> The Court:             Mr. Baker,[4] let me just state for the record while you're
> mentioning your representation. I know you met with Mr.
> Baker on many occasions; however, I know for a fact how
> many occasions you met with me and Mr. Moran. I mean,

---

[4] It appears that either the court or the court reporter made a mistake; the context of the court's comments
makes clear that he was referring to defense counsel, Mr. Cannon.

|                |                                                                                                                                                                                                                                                                             |
|----------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                | you met with me many, many times. So it's not like you were assigned a case six or eight months ago and this is like the second time I have seen you.                                                                                                                        |
| Mr. Cannon:    | That would be confirmed by my voucher.                                                                                                                                                                                                                                      |
| The Court:     | You might even say you pestered me at times but that probably isn't a good word. I guess I'm saying that, Mr. Baker, not only to protect the record, it's important for me to let you know, okay, that Mr. Cannon has been in there working very hard for you. Do you understand that? |
| The Defendant: | Yes, Your Honor, I understand that.                                                                                                                                                                                                                                         |
| The Court:     | He's been here time and time again. I know the preparation he'd done, I know the transcripts that he obtained from the family court proceeding and I know he's gone over them and I know how hard he's advocated for you. . . . I just want to say for the record, I know Mr. Cannon's done an outstanding job not only in his efforts but his knowledge of the law and he's researched this. |

Resp't Ans., Ex. X at 9-10. The trial court proceeded to review with petitioner the rights that he

was giving up by pleading guilty:

|                |                                                                                                                                                                                                                                                                         |
|----------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| The Court:     | [D]o you understand you have a right to a trial on both of these remaining indictments, sir?                                                                                                                                                                             |
| The Defendant: | Are you asking me?                                                                                                                                                                                                                                                       |
| The Court:     | Yes.                                                                                                                                                                                                                                                                     |
| The Defendant: | Yes, I understand.                                                                                                                                                                                                                                                       |
| The Court:     | This is the time where we have to talk back and forth. One [trial] would be the one's going to start tomorrow, basically the driving while intoxicated and the aggravated unlicensed first, that would be tomorrow; and then we would follow up in about a month with the charges with the sex crimes, for lack of a better term. You understand you're waiving your right to a trial; do you understand that? |
| The Defendant: | Yes.                                                                                                                                                                                                                                                                     |
| The Court:     | And that trial would be in front of a judge or a jury at your choosing; do you understand that:                                                                                                                                                                          |
| The Defendant: | That's right. I understand that.                                                                                                                                                                                                                                         |
| The Court:     | At those trials you or your attorney would have an opportunity to cross-examine witnesses, ask questions. You're giving up that right because there will be no trial; do you understand that?                                                                             |
| The Defendant: | That's right, I do.                                                                                                                                                                                                                                                      |

| | |
|---|---|
| The Court: | Now, you also have an absolute right to remain silent in any criminal proceeding. In other words, you can't be compelled to say anything. However, you're waiving that right because you are going to tell me what happened in both of these indictments; do you understand that? |
| The Defendant: | No. Repeat that, please. |
| The Court: | In any criminal proceeding, in other words, you have a trial, you can't be compelled to testify. You know that trial you went through last week? |
| The Defendant: | Yes. |
| The Court: | You're going to give up that right because you're pleading guilty here. You're going to make an admission as to some acts of what you did in both of these indictments. Do you understand that? |
| The Defendant: | Yes. |
| The Court: | Has anybody forced you, threatened you or coerced you in any way to make you plead guilty to these charges? |
| The Defendant: | No. |
| The Court: | Now, do you understand that you're receiving a six years definite – determinate sentence, I should say, on the sexual abuse first which is a D felony and on the driving while intoxicateds [*sic*] and the – it would be DWAI, you would receive one-and-one-third to four concurrent. In other words, they would go in together for one six year sentence; do you understand that? |
| The Defendant: | Yes. |
| . . . | |
| The Court: | You also understand you're waiving your right to appeal? |
| The Defendant: | Yes, I do understand that. |
| The Court: | Now, has anybody made any other promises to you to make you plead guilty to these charges? Have there been any other promises whatsoever? |
| The Defendant: | No. |
| . . . | |

Resp't Ans., Ex. X (Plea Transcript at 10-13). It is evident from the transcript, quoted above, that the trial court carefully explained all of the constitutional rights that petitioner was relinquishing by pleading guilty and also painstakingly made certain that petitioner was choosing to plead guilty of his own free will. The Court notes that when petitioner did have a question about the proceedings, he spoke up and asked the trial court for clarification. In short, there is nothing in

the record to indicate that petitioner's decision to plead guilty was anything but knowing, voluntary, and intelligent.

Furthermore, petitioner has not provided credible evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord. In the context of a plea allocution, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord, e.g., Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). Such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992) (no evidentiary hearing necessary where criminal defendant makes allegations that simply contradict his statements made under oath at plea allocution); *United States v. Bambulas*, 571 F.2d 525, 526 (10th Cir. 1978) (holding that statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth")). Based on what has been presented to this Court on habeas review, the Court concludes that no evidentiary hearing is necessary to decide this claim. Relief is accordingly denied.

**2.     Ineffective assistance of trial counsel**

     **a.     Legal standard**

To prevail on a claim that trial counsel rendered constitutionally ineffective assistance, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" under "[p]revailing norms of practice" and "affirmatively prove prejudice" by showing that there is a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668,

688, 693-94 (1984).  A petitioner must establish *both* that counsel's performance was deficient and that prejudice inured to him as a result of counsel's errors in order to obtain relief on an ineffective assistance claim. *See id.* at 687.

A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also*, *e.g.*, *United States v. Jones*, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight). Even if a petitioner can establish that counsel was deficient, he still must show that he was prejudiced. *See id.* at 693-94. In the context of a guilty plea, the prejudice prong of the test is met by showing "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### b.    Allegations of ineffectiveness

Petitioner complains that "[n]o where [*sic*] on record is there supporting facts that the County Level Counsel had informed defendant of charge elements prior to the plea colloquy. Specificly [*sic*], age requirement and the year the People were talking about. This information was not told to defendant until plea colloquy. But, this information was all ready [*sic*] avalable [*sic*] to Trial Court Attorney throught [*sic*] a 9-10 day Bench Trial (Family Court), that Attorney

refused to use. Family Ct. rendered a single A misdemeanor [*sic*]."[5] Petition, ¶22(B) (Docket No. 1).

To the extent that the Court can decipher petitioner's allegations, it appears that he is contending that trial counsel did not inform him of the elements of the sexual abuse charge to which he ultimately pleaded guilty. This claim is not supported by the transcript of the plea colloquy, in which defense counsel represented that he had had lengthy discussions with petitioner about the pending indictments and the plea deal. At that time, petitioner expressed no confusion or hesitation about pleading guilty to the charge of sexual abuse. To the extent that petitioner appears to be claiming that defense counsel failed to obtain certain transcripts, this allegation similarly is contradicted by the plea transcript; the trial court observed that, among other things, defense counsel in fact had obtained the transcripts in question.

In his Motion to Expand the Record (Docket No. 12), petitioner also contends that his trial counsel gave "written/oral testimony" against him, effectively leaving him "without the protection of the constitutionality of guilty plea provisions of the statute that was under consideration." Petitioner's Motion to Expand the Record at 2 (Docket No. 12). Petitioner is referring to the following exchange, which occurred while he was allocuting to the sexual abuse charge:

| Mr. Moran: | Mr. Baker, between October 1st 1996, and January 22, 1997, were you living with or in the company on a regular occasion with [A.H.]? |
| The Defendant: | Yes. |
| Mr. Moran: | Date of birth January 22, 1986? |
| The Defendant: | I think so. |

---

[5] The Court notes that Family Court does not adjudicate criminal cases; the Court has no idea what point petitioner is attempting to make here. Petitioner was found by the Family Court in Livingston County to have sexually abused both the victim A.H. and her sister.

| | |
|---|---|
| Mr. Moran: | Think so or are you pretty sure? |
| The Defendant: | I'm pretty sure it is. It's within the last part of January, yes. |
| Mr. Moran: | So between October of '96 and January of '97 she would have been ten, would have turned eleven sometime in January of '07? |
| The Defendant: | Approximately. Isn't it – |
| Mr. Moran: | Huh? |
| The Defendant: | Yeah[,] I think so. Right. |
| Mr. Moran: | This isn't a trick question. |
| The Defendant: | Repeat that again. I didn't hear what you said for sure. |
| Mr. Moran: | She was born in '86? |
| The Defendant: | Right. |
| Mr. Moran: | She doesn't turn eleven until '97, right? |
| Mr. Cannon: | I think Mr. Baker is willing to admit she was ten years[-]old at the time. |
| Mr. Moran: | When you were living with her prior to her eleventh birthday, did there come a point in time where you had sexual contact with her? |
| The Defendant: | Yes. |

Resp't Ans., Ex. X (Plea Transcript at 16).

After reading the challenged statements in context, it is evident that defense counsel was not testifying against his client but rather was trying to move the proceedings along. Petitioner, in any event, admitted that the victim had been born in 1986 and that her birthday was in the latter part of January. He also admitted that prior to her eleventh birthday, he had sexual contact with her.

Even if it would have been better practice for defense counsel to have refrained from interjecting that statement into the record, and rather have asked the court to speak with his client privately, the Court does not find that it was professionally unreasonable for counsel to have done so. More important, on the record before this Court, it is quite clear that petitioner was not prejudiced by this alleged error–in other words, there is no reasonable probability that but for this claimed transgression by defense counsel, petitioner would have abandoned the guilty plea

and instead have proceeded to trial.

The Court notes that at sentencing, defense counsel candidly informed the trial court that prior to coming into court that day, petitioner had told him that he was "innocent" and had been "railroaded" and that it was "all [counsel's] fault." Defense counsel explained that he had advised petitioner to withdraw his guilty plea:

| | |
|---|---|
| Mr. Cannon: | I am advising him to request a withdrawal of his plea, Your Honor, and in – further, in light of the fact that my relationship with him has completely broken down and I can no longer communicate with him on a civil level, I am asking that you relieve me of any further assignment on Mr. Baker's behalf. |
| The Court: | All right. Mr. Baker, does that sum up your feelings? Anything you would like to add to what he has just said? |
| The Defendant: | Well, sir, I just want that on the record, like, *but that I'll take the deal*. |
| . . . | |
| The Court: | You want to – you just said you want to take the deal, you don't want to withdraw your plea and you're not asking for a trial; is that correct? |
| The Defendant: | Right. Right. |

Resp't Ans., Ex. X (Sentencing Transcript at 3-6) (emphasis supplied). The Court finds the foregoing exchange significant–petitioner has never alleged that he wants to withdraw his guilty plea. Indeed, even when his defense counsel was advising him to withdraw his plea, petitioner maintained that he still wanted "the deal." It is apparent that petitioner simply wanted to "have his cake and eat it, too." It is equally apparent that there were no constitutional infirmities either in petitioner's representation by counsel or in his guilty plea.

## CONCLUSION

For the reasons stated above, petitioner James Baker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner

has failed to make a substantial showing of a denial of a constitutional right, the Court declines

to issue a certificate of appealability. *See* 28 U.S.C. § 2253. The Court further certifies that

pursuant to 28 U.S.C. § 1915(a)(3), any appeal would not be taken in good faith and therefore *in*

*forma pauperis* status is denied for purpose of an appeal.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:     October 27, 2006
           Buffalo, New York.